# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4233 | **DATE** | 2/28/2003 |
| **CASE TITLE** | Kielbasa vs. Illinois Environmental Protection Agency, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is granted in part and denied in part [#6]. The official capacity ADA and RA claims against Cipriano are dismissed without prejudice. The § 1983 claims against the IEPA are dismissed with prejudice. The official and individual capacity § 1983 claims against Cipriano are dismissed with prejudice. Any ADA or RA claims prior to February 10, 2000 are also dismissed with prejudice. With only ADA and RA claims remaining the court dismisses Cipriano from the action. Kielbasa is directed to file by 3/14/03 an amended complaint reflecting the rulings herein. The IEPA is directed to answer the remaining portions of the Complaint by 3/28/03 A scheduling conference will be held on 4/14/03 at 9:30 a.m. In the meantime, the parties are directed to meet in an effort to resolve this case short of trial.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 3 2003 date docketed | |
| | Notified counsel by telephone. | | | 14 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 03 FEB 28 PM 5:28 | 2/28/2003 date mailed notice | |
| MD | courtroom deputy's initials | OT 03-0371J Date/time received in central Clerk's Office | MD mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD KIELBASA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 02 C 4233 |
| ) | Judge Joan H. Lefkow |
| ILLINOIS ENVIRONMENTAL ) | |
| PROTECTION AGENCY, and RENEE ) | |
| CIPRIANO, Individually and In Her Official ) | |
| Capacity as Director of the Illinois ) | **DOCKETED** |
| Environmental Protection Agency, ) | |
| ) | MAR 0 3 2003 |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Richard Kielbasa ("Kielbasa"), brings this action against the Illinois Environmental Protection Agency ("IEPA") and its Director, Renee Cipriano ("Cipriano"), both individually and in her official capacity, alleging failure to reasonably accommodate his disability in violation of the Americans with Disabilities Act ("ADA"), 29 U.S.C. §§ 12101 *et seq.*; 42 U.S.C. § 1983; and the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. §§ 701 *et seq.* This court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 and 1343(a), 42 U.S.C. § 12117(a), and 29 U.S.C. § 791. Before the court is defendants' motion to dismiss portions of Kielbasa's Complaint. For the reasons set forth below, the court grants the motion in part and denies it in part.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## ALLEGATIONS OF THE COMPLAINT

Kielbasa's Complaint, taken as true for purposes of this motion, alleges the following facts: Kielbasa has been employed at the IEPA since May of 1986. In 1992, Kielbasa was promoted from a Vehicle Emission Compliance Inspector ("VECI") to a supervisory position. As part of his supervisory duties, Kielbasa made visits to various IEPA facilities and ensured that needed work was being completed. Supervisors at the IEPA were provided with state automobiles to perform their duties. In November 1997, Kielbasa was diagnosed with having a tumor located in his optic chiasm. Beginning in January 1998, Kielbasa started receiving medical treatments to reduce the tumor. As a result, Kielbasa's eyesight worsened from January 1998 until November 1998, and then stabilized at a level of "severe vision impairment." By June 1998, Kielbasa's vision impairment rendered him unable to drive or read.

In June 1998, Kielbasa requested reasonable accommodations from the IEPA in order to continue performing his duties. Kielbasa asked for equipment that enlarged written and printed materials, in addition to transportation assistance. IEPA provided the equipment to enable Kielbasa to read. Further, according to the Complaint, Kielbasa's supervisor and the Personnel Liaison for the Bureau of Air and Vehicle Emissions within the IEPA agreed to have Quality

2

Assurance Auditors drive Kielbasa to the various facilities. For a period of twenty months, three Quality Assurance Auditors took turns driving Kielbasa to the various facilities.

On April 10, 2000, Lynda Martin ("Martin"), the EEO/AA/ADA Manager for the IEPA, phoned Kielbasa and informed him that he could not continue as a supervisor and was being transferred to a different position. On April 19, 2000, Kielbasa received a memorandum stating that he would be assigned to work as a VECI on a trial basis. On April 20, 2000, Kielbasa sent a memorandum agreeing to accept the transfer on a conditional basis. In the same memorandum, Kielbasa stated that because the transfer was a reduction in title and salary, it was not a reasonable accommodation.

On May 5, 2000, Martin sent Kielbasa a letter stating the IEPA had already provided him with reasonable accommodation in the form of equipment that would allow Kielbasa to read written printed materials. In the May 5, 2000 letter, Martin gave Kielbasa three options regarding his employment: (1) an Executive I[1] position; (2) the VECI position he was initially going to be transferred to; or (3) a leave of absence. Kielbasa took the Executive I position.

Martin also stated in her letter that the use of auditors driving Kielbasa to and from his work sites was in violation of the collective bargaining agreement and could not be continued. The May 5, 2000 letter did not address any alternative means of transportation for Kielbasa in his supervisory duties other than using the auditors. At no time between the April 10, 2000 telephone call and the present did anyone from the IEPA discuss possible alternative forms of transportation or accommodations for Kielbasa to continue as a supervisor.

---

[1] The parties do not explain the nature of the Executive I position other than to say that it is of comparable pay to Kielbasa's old supervisory position.

3

After transferring to the Executive I position, Kielbasa sent letters to the IEPA asking them to reconsider allowing him to return to his supervisor position with some form of accommodation. The IEPA responded in a letter on June 9, 2000, stating that Kielbasa's grievance had been resolved when he agreed to take the Executive I position.

On October 3, 2000, Kielbasa filed a charge against the IEPA with the Equal Employment Opportunity Commission ("EEOC"). On June 29, 2001, the EEOC sent Kielbasa a letter stating that it had determined that the IEPA had failed to reasonably accommodate Kielbasa in violation of the ADA, and invited the parties to join with the EEOC in reaching a resolution of the matter through conciliation. The IEPA refused to participate in the conciliation process. On March 14, 2002, the EEOC sent a right-to-sue letter to Kielbasa. On June 13, 2002, Kielbasa filed his Complaint in this court seeking injunctive relief and damages against the IEPA and Cipriano, the current director of the IEPA.[2] Kielbasa alleges that the defendants refused and failed to continue accommodating his disability, demoted him, and treated him in a manner "significantly different from and inferior" to the treatment of their similarly situated employees without visual impairments.

## DISCUSSION

In Count I of his Complaint, Kielbasa alleges that the IEPA and Cipriano failed to reasonably accommodate his disability while in his supervisory position at the IEPA in violation of the ADA and 42 U.S.C. § 1983. In Count II, Kielbasa again alleges a failure to reasonably accommodate his disability in his supervisory position, this time in violation of the RA.

---

[2]Kielbasa initially also asked the court in his Complaint for punitive damages, but has since withdrawn that request.

4

Defendants argue that (A) Kielbasa's ADA and RA claims against Cipriano in her official capacity are redundant to the claims brought against the IEPA and should be dismissed; (B) Kielbasa's § 1983 claim against the IEPA should be dismissed because the IEPA is immune from suit and is not a "person" for the purposes of § 1983; (C) Kielbasa's § 1983 claim against Cipriano individually should be dismissed for lack of personal involvement; (D) Kielbasa is barred from bringing a § 1983 claim against Cipriano in her official capacity where the only alleged violation is of rights created by the ADA and/or RA and that all of Kielbasa's § 1983 claims prior to June 13, 2000 should be dismissed since the allegations are time-barred pursuant to the applicable two-year statute of limitations; and (E) Kielbasa is barred from ADA and RA claims prior to February 10, 2000 as these allegations would fall outside the 300-day limitations period for filing administrative charges.

A.     **ADA and RA Claims Against Cipriano in Her Official Capacity.**

Kielbasa's Complaint asserts ADA and RA claims against not only the IEPA but also against Cipriano in her official capacity as Director of the IEPA. As defendants point out, suit against a public official in their "official capacity" is a suit against the entity of which that official is an agent. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Thus, the suit against Cipriano in her official capacity is in reality a suit against the IEPA. No other result could otherwise be achieved under the ADA, as it applies only to "employers, places of public accommodations, and other organizations, not the employees or managers of these organizations." *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), citing *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999). Moreover, since the ADA and RA claims against Cipriano in her official capacity are redundant of the very same claims brought against

the IEPA, such claims are dismissed with prejudice.. *E.g., Hale v. Renee-Baker*, No. 01 C 7073, 2002 WL 1613765, at *1 (N.D. Ill. July 19, 2002); *Berry v. Illinois Dep't of Human Servs.*, No. 00 C 5538, 2001 WL 111035, at *8 (N.D. Ill. Feb. 2, 2001).

**B.    Section 1983 Claims Against the IEPA.**

Count I of Kielbasa's Complaint alleges, among other things, that the IEPA discriminated against Kielbasa in violation of § 1983. The IEPA, however, as an agency of the State of Illinois, is immune from all § 1983 claims under the Eleventh Amendment. *Ryan v. Illinois Dep't of Children and Family Servs.*, 185 F.3d 751, 758 (7th Cir. 1999) ("Here, there is no waiver [of sovereign immunity], and it is well established that neither a state nor a state agency like DCFS is a 'person' for purposes of § 1983."). Thus, all § 1983 claims against the IEPA are dismissed with prejudice.

**C.    Section 1983 Claims Against Cipriano in Both Her Individual and Official Capacities.**

Kielbasa also seeks relief against Cipriano under § 1983 in both her individual and official capacities. Kielbasa states that the individual capacity claims are for Cipriano's personal involvement[3] in the actions against Kielbasa, while the official capacity claims are for injunctive relief and are directed against Cirpriano in her official capacity as the Director of the IEPA and relate to a two-year continuous period of discrimination preceding the filing of the Complaint.

---

[3]Defendants argue that the claims against Cipriano in her individual capacity should be dismissed for lack of personal involvement because the employment actions taken against Kielbasa were before Cirpriano became Director of the IEPA. This being a motion to dismiss, however, all well-pled facts in the Complaint are taken as true. Nothing in the Complaint suggests when Cipriano took her position as Director of the IEPA. Further, the Complaint alleges that Cirpriano "required Mr. Kielbasa to transfer out of his supervisor position without determining what accommodations were possible and reasonable to enable Mr. Kielbasa to continue to perform his supervisor duties." (Compl. ¶ 56.) This is sufficient under the federal notice pleading standards.

Defendants argue Kielbasa should not be allowed to bring his action under § 1983 because he seeks relief only for violations of rights contained in the ADA and RA and because the two-year statute of limitations on § 1983 actions has passed. *Mitchell* v. *Donchin*, 286 F.3d 447, 450 n.1 (7th Cir. 2002) ("To determine the proper statute of limitations for section 1983 actions, the federal court adopts the forum state's statute of limitations for personal injury claims . . . . Pursuant to 735 ILCS 5/13-202, the statute of limitations for section 1983 cases filed in federal court is two years.") (internal citations omitted).

Without addressing defendants' argument concerning whether ADA and RA rights may be brought under § 1983, the court concludes that any such § 1983 claims are time-barred under the two-year statute of limitations applicable to such actions. While determining whether an action is barred under a statute of limitations is often inappropriate on a Rule 12(b)(6) motion because of the need to make factual determinations, a plaintiff may plead facts showing that the action is barred by the limitations period. *Kauthar SDN BHD* v. *Sternberg*, 149 F.3d 659, 669 (7th Cir. 1998); *Johnson Controls, Inc.* v. *Exide Corp.*, 129 F. Supp. 2d 1137, 1142 (N.D. Ill. 2001). Section 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly* v. *City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). The time when Kielbasa's constitutional rights would have been violated is when he was told on April 20, 2000 that he could not continue as a supervisor and would be transferred to a different position. Kielbasa's Complaint, which was filed on June 13, 2002, was not within two years of that date.

Moreover, Kielbasa's argument that the facts of this case fall under a continuing violation theory is unpersuasive. A continuing violation occurs (1) "when an employer makes

7

employment decisions over time that make it difficult for the employee to determine the actual date of discrimination;" (2) an express discriminatory policy of the employer; or (3) "where discrete acts of discrimination are part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period." *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002). None of these scenarios is applicable to the facts as alleged here. Kielbasa alleges a singular discrete discriminatory act stemming from defendants' failure to reasonably accommodate his disability, which caused his demotion to another position. While the effects of this action continued onward into the statute of limitations period, nothing in the Complaint illustrates that the alleged discriminatory act made it difficult for Kielbasa to determine the date of discrimination, that an otherwise express policy existed, or that an ongoing pattern of discrimination existed with one act occurring within the limitations period. An employer's refusal or inaction to undo an allegedly discriminatory decision is not a fresh act of discrimination. *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) ("But when the first decision is connected to and implies the second–when, in other words, a single discriminatory decision is taken, communicated, and later enforced despite pleas to relent–the time starts with the initial decision."). As such, the court will dismiss the § 1983 claims with prejudice.

**D.    ADA and RA Claims.**

Defendants argue that the ADA and RA claims against them prior to February 10, 2000 should be dismissed because such claims would fall outside the 300-day limitations period to file an administrative charge complaining of discrimination. *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 970 (7th Cir. 1996). In response, plaintiffs state that they have no such claims prior

8

to February 10, 2000 and that the first incident of discrimination occurred on April 10, 2000. Insofar as the parties have no dispute concerning claims before February 10, 2000, such facts prior to that date, and any such claims that may have arisen, are dismissed with prejudice.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted in part and denied in part [#6]. The official capacity ADA and RA claims against Cipriano are dismissed without prejudice. The § 1983 claims against the IEPA are dismissed with prejudice based on the Eleventh Amendment. The official and individual capacity § 1983 claims against Cipriano are dismissed with prejudice. Any ADA or RA claims prior to February 10, 2000 are also dismissed with prejudice. With only ADA and RA claims remaining the court dismisses Cipriano from the action. Kielbasa is directed to file by March 14, 2003 an amended complaint reflecting the rulings herein. The IEPA is directed to answer the remaining portions of the Complaint by March 28, 2003. A scheduling conference will be held on April 14, 2003 at 9:30 a.m. In the meantime, the parties are directed to meet in an effort to resolve this case short of trial.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 28, 2003

9